UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BISKERKA ORUCEVIC, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. C07-1981 CRD <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Biskerka Orucevic appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("SSA" or the "Act"), 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-nine-year-old woman, forty-three years old at the alleged disability onset date. She has an eighth grade education in Bosnia and work experience as a janitor and factory worker.

Plaintiff applied for SSI in August 2003 alleging disability since May 2002 for depression and anxiety. Her claim was denied initially and upon reconsideration, and after a first ALJ hearing, her claim was denied on August 25, 2006. The Appeals Council remanded for the ALJ's failure to address the lay witness testimony of Plaintiff's son, who testified at the hearing.

ORDER - 1

On remand, a second hearing was held before the same ALJ, ALJ Filion. The ALJ heard testimony from Plaintiff, who was represented by counsel, Peter McKee, Esq. Administrative Record ("AR") at 585-602. The ALJ again rendered an unfavorable decision on August 3, 2007. Plaintiff requested review by the Appeals Council and review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On December 14, 2007, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Ms. Orucevic bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 29, Finding 1. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of anxiety disorder, major depressive disorder, and rule out hypochondriasis. AR 29, Finding 2. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. In this case the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR at 30, Finding 3.

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff has no exertional limitations and that she can perform simple and repetitive tasks that do not require intensive contact with members of the general public. AR 31, Finding 4.

The ALJ next found that Plaintiff is able to perform her past relevant work as a janitor. AR 36, Finding 5. If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. Here, although the ALJ found Plaintiff able to perform her past work, due to the short duration of her janitor job the ALJ also proceeded to step five. The ALJ found that Plaintiff's ability to perform unskilled work with limited public contact at all exertional levels is not compromised by any nonexertional limitations. AR at 37. The ALJ therefore concluded at step four and step five that Plaintiff is not disabled as defined in the SSA. *Id*.

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in evaluating Plaintiff's treating psychiatrist's opinion?
2. Did the ALJ err in evaluating Plaintiff's past relevant work?
3. Did the ALJ err in not consulting a vocational expert?

Dkt. Nos. 13, 15.

///

///

# VI. DISCUSSION

The ALJ found Plaintiff not disabled because she could perform her past work as a janitor as well as other unskilled work with limited public contact at all exertional levels. Plaintiff argues that the ALJ erred in evaluating the opinion of her treating psychiatrist, evaluating her past relevant work as a janitor, and using the SSA guidelines in concluding she is not disabled.

### A. *The ALJ did not err in evaluating Dr. Kocsis' psychiatric opinion.*

The ALJ discounted the opinions of Dr. Kocsis, Plaintiff's treating psychiatrist, and instead credited the opinion of the state agency psychological consultant who found Plaintiff could work performing simple repetitive tasks that did not require intensive contact with the public. AR 36. Plaintiff argues that the ALJ's rejection is not supported by clear and convincing reasons and that if the ALJ were to properly credit Dr. Kocsis' opinions of December 2005, October 2004, February 2005, and February 2006, Plaintiff would meet SSA listed impairments. Dkt. 13 at 6. Defendant's brief is largely unresponsive to Plaintiff's specific arguments and vaguely argues that "substantial evidence" supports the ALJ's decision.

To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor, may be upheld. *Morgan v. Commissioner,* 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

In this case, the ALJ gave reduced weight to the opinion of Dr. Kocsis, finding that a December 2005 letter written by a mental health counselor and signed by Dr. Kocsis is unsupported by medical evidence and inconsistent with a letter the doctor wrote one month prior in November 2005. AR 47. The ALJ additionally gave the December 2005 letter reduced weight because she found it akin to an advocacy opinion. *Id.* The ALJ noted that although the letter was from a treating source, it was written by a mental health counselor and signed by Dr. Kocsis; however, the ALJ found the letter was nonetheless inconsistent with medical evidence obtained during treatment. AR 47.

Dr. Kocsis' marked findings in the 2005 letter are contradicted by the state agency examiner's opinion that Plaintiff is capable of simple repetitive work away from the public. Because the opinion is contradicted, the ALJ must give "specific and legitimate reasons that are supported by substantial evidence," not "clear and convincing" reasons, as Plaintiff argues.[2] *Magallanes*, 881 F.2d at 751-55. Inconsistency in a physician's conclusions is a specific and legitimate reason for rejecting a medical opinion. The December 2005 letter notes marked limitations in areas of functioning; however, as the ALJ notes, in November 2005 Dr. Kocsis found that Plaintiff's anxiety had significantly improved since beginning medication, and that Plaintiff appeared well groomed, logical, focused, and goal-oriented; she was not having nightmares; she had not experienced flashbacks for several weeks; her sleep and appetite were stable and she described her mood as "okay." AR 329. The ALJ also discounted the opinion letter because treatment records do not show the limitations described by Dr. Kocsis. Although some of the symptoms described by Dr. Kocsis were also noted in 2003 (AR 266, 271), Dr. Kocsis' November 2005 report shows improvement with medication in most areas (AR 329). The 2003 report also indicates that medication was helpful in decreasing her nightmares and anxiety and enabled her to sleep better.

Plaintiff next argues that the ALJ did not cite any reason for rejecting Dr. Kocsis' report of October 18, 2004, which found moderate limitations in three cognitive areas and marked

---

[2] Plaintiff's reply brief articulates the correct standard of "specific and legitimate" reasons. Dkt. 15 at 2.

limitations in three social factors. AR 338. Defendant does not address this issue, however the Court notes the report is similar to the December 2005 opinion letter, which the ALJ specifically rejected.

Plaintiff next argues that the ALJ did not give sufficient reasons for rejecting Dr. Kocsis' February 2005 and February 2006 reports. Again, Defendant does not address either issue. With respect to the February 2005 opinion, the ALJ noted in her first written decision that it was inconsistent with the November 2005 treatment notes that indicated improvement. Plaintiff argues that even if she had improved between February and November 2005, other evidence in the record shows the symptoms were present at least as of her first evaluation in May 2003, and that subsequent improvement is insufficient to reject earlier records. However, the ALJ's finding inconsistency both nine months before and one month after the November 2005 opinion is a specific and legitimate reason to give the reports reduced weight. The Court also notes that in a recent report of July 2006, Dr. Kocsis again reported that although Plaintiff has had a long struggle with depression and anxiety, her symptoms have been stable on medication, her sleep and appetite are stable, her affect is euthymic, and her mood is "okay." AR 520.

In February 2006, Dr. Kocsis completed a psychiatric evaluation form which found that Plaintiff "dissociates" and her response to questions is often "I don't know." AR 36. Dr. Kocsis found that Plaintiff complained of headaches and stomach aches from stress, noted her personal hygiene was poor, and opined that Plaintiff had marked limitations in cognitive and social factors, and extreme limitations in tolerating work stress. *Id.* The ALJ rejected the report because the longitudinal treatment records do not show extensive dissociative episodes, poor hygiene, and psychomotor retardation. AR 36. Plaintiff concedes that the record does not elsewhere indicate psychomotor retardation, but he points to several notes by Dr. Kocsis of dissociative behavior and her poor hygiene. The ALJ found Dr. Kocsis' reports inconsistent; on some occasions the doctor finds Plaintiff quite limited but on at least two other occasions (November 2005 and July 2006) the doctor found her condition had improved. The Court finds that the reasons cited by the ALJ for rejecting Dr. Kocsis' opinion are specific and legitimate and based on substantial evidence in the record. Accordingly, the ALJ's findings were not in error.

### B. *The ALJ did not err in evaluating Plaintiff's past relevant work.*

Plaintiff asserts that the ALJ erred in evaluating her past relevant work as a janitor because she did not consider whether it was an "unsuccessful work attempt" and because the ALJ did not make factual findings regarding how the job is performed. In 2001, Plaintiff worked as a janitor for approximately three months. Plaintiff argues that this should have been considered an unsuccessful work attempt because it is possible that she may have been terminated. The Court does not agree. Plaintiff testified that she did not know whether she was fired or quit, but that it was related to problems with her hands and because she did not have transportation to get to work. AR 563. An unsuccessful work attempt may be found when a claimant works six months or less and stopped working due to an impairment. 20 C.F.R. § 416.974(c). Plaintiff's testimony does not suggest that she stopped working due to one of her alleged mental impairments; she testified that her hand and transportation problems caused her to stop working. In 2004 Plaintiff reported she was fired for inadequate performance but did not specify the cause. AR 342. Thus, there was no evidence or reason for the ALJ to consider whether the job was an unsuccessful work attempt due to an alleged impairment. Notably, Plaintiff does not argue that she stopped working due to any of her alleged impairments, but argues only that it is possible.

Plaintiff next argues that the ALJ erred in finding that her prior janitorial job was unskilled and required no public contact, because she did not investigate the requirements of the job, either as Plaintiff performed it, or as it is generally performed in the national economy. At step four of the disability analysis, an ALJ determines whether a claimant can perform past relevant work, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 416.960(b)(2). Defendant argues that the Dictionary of Occupational Titles ("DOT") classifies the janitorial job as unskilled and having insignificant involvement with people. Notably, Plaintiff does not argue that her janitor job was not unskilled or that it required more than minimal public contact nor does Plaintiff cite any evidence that would suggest a different result might be reached if the ALJ had specified the type of work performed. Based on the information in the record, the ALJ reasonably concluded that Plaintiff's

ORDER - 8

janitorial work of cleaning offices for IBM involved unskilled work with minimal public interaction. Also, although not cited by the ALJ, the DOT supports the ALJ's finding. The Court finds the ALJ did not err in finding Plaintiff could perform unskilled janitorial work. Regardless, due to the short duration of Plaintiff's janitorial work (three months), the ALJ proceeded with the next step of the analysis, additionally considering whether she could perform other work.

### C. *The ALJ did not err in not consulting a vocational expert.*

At step five, the ALJ used the Medical-Vocational Guidelines ("guidelines" or "grids") in determining that Plaintiff could perform unskilled work involving simple, repetitive tasks with limited public contact, at all exertional levels. AR at 31. Plaintiff challenges the ALJ's use of the guidelines without consulting a vocational expert ("VE"), arguing not all unskilled work is simple and repetitive, therefore, a VE was required to determine what unskilled work she can perform. Plaintiff argues that only jobs with "reasoning level one" are consistent with simple, repetitive work and that some unskilled jobs may have a higher reasoning level.

"There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical-Vocational Guidelines... Where the claimant has **significant** non-exertional impairments, however, the ALJ cannot rely on the Guidelines." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citations omitted; emphasis added). An ALJ's use of the grids is permissible where the grids "completely and accurately represent a claimant's limitations, such that a claimant is able to perform the full range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 404.1560(b)(3); Part 404, Subpart P, App. 2, Rule 200(e). "However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Tacket*, 180 F.3d at 1102 (emphasis added).

Here, the ALJ concluded that:

> The Claimant's ability to perform work at all exertional levels has been
> compromised by nonexertional limitations. However, these limitations have little
> or no effect on the occupational base of unskilled work at all exertional levels. A
> finding of "not disabled" is therefore appropriate under the framework of section
> 204.00 in the Medical-Vocational Guidelines and based on the provisions of SSR
> 85-15.

AR at 37.

Plaintiff argues that based on *Holohan v. Massanari,* 246 F.3d 1195 (9th Cir. 2001), a limitation to simple repetitive tasks is a significant nonexertional limitation. The Court does not agree.[3] *Holohan* held that the ALJ's reliance on the guidelines was in error in light of Plaintiff's nonexertional impairments. *Id.* at 1208-09. However, *Holohan* did not explicitly address the severity issue and did not find that a limitation to simple repetitive tasks is *per se* a significant nonexertional limitation.[4] Thereafter, the Ninth Circuit addressed the issue in *Hoopai,* holding that "[a] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Thus the dispositive issue here, as in *Hoopai*, is the severity of the nonexertional impairment. Plaintiff maintains that a limitation to simple repetitive tasks is sufficiently severe in itself to require a VE. The Court disagrees. Under *Hoopai,* the ALJ is required to determine whether Plaintiff's nonexertional impairments would significantly limit her ability to perform unskilled work. Here, the ALJ found that the impairments would have "little or no effect." AR 37. The Court finds substantial evidence in the record supports the ALJ's conclusion that Plaintiff's nonexertional limitations are not sufficiently severe such that they significantly affect her ability to perform unskilled work involving simple and repetitive tasks. There is nothing in

---

[3] The Court also notes that although the terms are often used interchangeably in case law, generally "impairments" such as depression, anxiety, and concentration are distinct from the resulting "limitations" such as to simple repetitive work, or to work with no public contact.

[4] Holohan was a victim of physical and mental spousal abuse resulting in a history of extreme psychological damage. The court remanded for payment of benefits for, among other reasons, the ALJ's failure to base rejection of Holohan's treating physician's opinion on substantial evidence, and found plaintiff's severe psychological limitations required vocational expert testimony rather than sole reliance on the grids. The court fundamentally disagreed with the ALJ's finding as to the degree of severity of the impairments. The *Holohan* court did not remand for rehearing with a VE but found Holohan's limitations severe enough to award benefits without further hearing.

ORDER - 10

the record that suggests a limitation to simple repetitive work with limited public contact would overtake Plaintiff's ability to perform unskilled work; Plaintiff's nonexertional impairments are not sufficiently severe to prohibit the ALJ's reliance on the grids without the assistance of a VE. Accordingly, this Court finds no error of law.

Plaintiff also argues that the lack of vocational expert was in error because the ALJ erroneously equates unskilled work with simple/repetitive work. Plaintiff cites the DOT in her favor, arguing that the unskilled jobs in the guidelines are based on DOT definitions which do not equate the terms. Plaintiff presents a lengthy argument that the DOT does not equate unskilled with simple/repetitive and argues that the DOT's reasoning levels[5] more appropriately apply. Dkt. 13 at 20. Plaintiff asserts that only unskilled jobs with reasoning levels of one involve simple/repetitive tasks, and that based on the DOT, the guidelines also include "unskilled" jobs with a reasoning level of two that require more than simple/repetitive tasks. Plaintiff argues the ALJ erroneously believed that all unskilled jobs require the performance of no more than simple tasks, and therefore a vocational expert is required to differentiate between unskilled work having reasoning levels of one or two.

Plaintiff cites no authority in support of her assertion that only reasoning level one is consistent with simple, unskilled work, nor has this Court found any. Other Circuits and district courts have weighed in and reached a variety of conclusions. *See e.g., Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005); *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997); *Renfrow v. Astrue*, 496 F.3d 918 (8th Cir. 2007); *Money v. Barnhart*, No. 03-2553, 2004 WL 362291; *Meissl v. Barnhart*, 403 F. Supp. 2d 891 (C.D. Cal. 2005); *Flaherty v. Halter*, 182 F. Supp. 2d 824 (D. Minn. 2001). Absent controlling authority to the contrary, this Court does not find error in the ALJ's conclusion that Plaintiff can perform unskilled work because of her limitation to simple, repetitive tasks. The Court notes that Plaintiff's RFC appears consistent with the SSA's definition of "unskilled" work[6] and that the definition describes repetitive tasks as the primary

---

[5] The DOT assigns General Educational Development reasoning levels 1-6 to jobs representing reasoning, math and language skill levels.

[6] Unskilled work is work which needs little or no judgment to do **simple** duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling,

ORDER - 11

work duty (handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending). Without any supportive authority for Plaintiff's argument, this Court cannot assign error.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case DISMISSED.

DATED this 16th day of October, 2008.

_____
Carolyn R. Dimmick
United States District Judge

---

feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs. 20 C.F.R. § 416.968(a) (emphasis added).

ORDER - 12